UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIAH MONTEIRO,<br><br>Plaintiff,<br><br>v.<br><br>RAC ACCEPTANCE EAST, LLC, and JEREMY EAD,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*  Civil Action No. 1:24-cv-12772-IT<br>*<br>*<br>*<br>* |

MEMORANDUM & ORDER

September 11, 2025

TALWANI, D.J.

    Plaintiff Mariah Monteiro brought this action against her former employer, RAC Acceptance East, LLC ("RAC"), and former co-worker, Jeremy Ead ("Ead" and together with RAC, "Defendants"), for sexual harassment, sex/gender discrimination, and retaliation under Mass. Gen. Law c. 151B. Compl. [Doc. No. 1-1]. Defendants removed the action to this court and filed the pending Motion to Compel Arbitration [Doc. No. 10] pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq.

    Defendants' Motion is based on an agreement to arbitrate signed by Plaintiff after accepting employment with RAC. Decl. of Donna Crump ("Crump Decl.") ¶ 9 [Doc. No. 12]. Plaintiff opposed the Motion, arguing that the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022), renders the arbitration agreement invalid and unenforceable. Pl.'s Opp. 4–9 [Doc. No. 16].

    For the following reasons, the court finds that Plaintiff's claims of sexual harassment, sex/gender discrimination and retaliation accrued <u>after</u> the March 3, 2022 effective date of the

EFAA such that the EFAA applies and the parties' agreement to arbitrate cannot be enforced. Accordingly, Defendants' Motion is DENIED.

### I. Background

#### A. *The Arbitration Agreement*

Plaintiff is a former employee of RAC. On May 4, 2019, as part of the onboarding process for a Sales Assistant Manager position, Plaintiff signed several agreements. Crump Decl. ¶¶ 8–9 [Doc. No. 12]. One of the agreements Plaintiff signed was a Mutual Agreement to Arbitrate Claims ("Arbitration Agreement"). Id. ¶ 9; see also Crump Decl. Ex. 2, at 5 [Doc. No. 12-2].

#### B. *Allegations in the Complaint*

Plaintiff alleges that, around September 2021, she was transferred to a new location as a Sales Assistant Manager. Compl. ¶ 6 [Doc. No. 1-1]. Ead was a co-worker there, working as a Collections Assistant Manager. Id. ¶ 7. Plaintiff alleges that Ead made a series of inappropriate and sexually suggestive remarks towards her over the course of her employment. Id. He touched and smelled Plaintiff's hair and said that he "had a thing for girls with nice hair." Id. ¶ 8. Around October 8, 2021, Ead commented "Thirst trap" to Plaintiff's selfie on social media. Id. ¶ 9. Around October 24, 2021, Ead replied to Plaintiff's happy birthday wishes with "Bday boobs." Id. ¶ 10. Around November 12, 2021, Ead messaged Plaintiff asking, "Where's the bum pic." Id. ¶ 11. He then sent a text stating "Boobs" on November 17, 2021. Id. Around January 7, 2022, Ead sent Plaintiff peach and coconut emojis. Id. ¶ 12. Around January 26, 2022, Ead asked Plaintiff, in person, to show him her breasts. Id. ¶ 13. He also remarked that he liked her buttocks. Id. ¶ 14. Ead talked about his sexual relations in detail in front of Plaintiff. Id. ¶ 15. At the end of January or beginning of February 2022, Ead showed Plaintiff a picture of his groin area. Id. ¶ 16.

Plaintiff alleges further that towards the end of February or beginning of March 2022, Plaintiff reported the sexual harassment to the Store Manager, Jeffrey Jennings, but her complaints were dismissed. Id. ¶ 17. Jennings, a friend of Ead, told the other staff that Plaintiff was the only one not given a raise. Id. ¶¶ 17, 19. Plaintiff perceived her exclusion from the raise as a retaliatory measure by Jennings and reported it to the Regional Manager. Id. ¶¶ 19–20. The Regional Manager promised Plaintiff to transfer her out to a different location. Id. Around March 12, 2022, Ead texted Plaintiff about breasts. Id. ¶ 21. On or about March 14, 2022, prior to the transfer, Plaintiff was fired by Jennings. Id. ¶¶ 22–23.

Plaintiff commenced this action against RAC and Ead on August 30, 2024.

II.     **Discussion**

The FAA provides that written agreements to arbitrate are, in general, "valid, irrevocable, and enforceable." 9 U.S.C. § 2. Plaintiff does not dispute that she entered into a valid arbitration agreement and that the agreement covers Plaintiff's claims. Pl.'s. Opp. 4 [Doc. No. 16]. Plaintiff contends, however, that the EFAA applies, such that the Arbitration Agreement is not enforceable here. Id.

The EFAA allows a person "alleging conduct constituting a sexual harassment dispute" to nullify pre-dispute arbitration clauses in cases that relate to the dispute. 9 U.S.C. § 402(a). A "sexual harassment dispute" means "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal or State law." Id. § 401(4). It is the "court, rather than an arbitrator" that decides "[t]he applicability of this chapter to an agreement to arbitrate and the validity and enforceability of an agreement to which this chapter applies[.]" Id. § 402(b).

The EFAA applies "with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act," which is March 3, 2022 ("Effective Date"). Pub. L. No. 117-

3

90, § 3, 136 Stat. 26, 28 (2022).[1] The court therefore considers whether Plaintiff's claims "alleging conduct constituting a sexual harassment dispute" that accrued after the March 3, 2022 Effective Date.[2]

A. Retaliation

The court first turns to Plaintiff's retaliation claims against RAC (Count IV) and Ead (Count VIII). Although Defendants seek to compel arbitration of all claims, see Mot. to Compel Arb. 1 [Doc. No. 10], Defendants do not discuss the retaliation claims at all.

Plaintiff alleges that she was fired on or about March 14, 2022, as retaliation against her resistance to and reporting of sexual harassment and discrimination. Compl. ¶ 23 [Doc. No. 1-1]. Her claims of a retaliatory termination constitute a "sexual harassment dispute," as the alleged unlawful adverse employment action "relat[es] to conduct that is alleged to constitute sexual harassment under applicable . . . State law." 9 U.S.C. § 401(4); see also Olivieri v. Stifel, Nicolaus & Co., Inc., 112 F.4th 74, 92 (2d Cir. 2024) (finding that retaliation resulting from a

---

[1] Section 3 of the EFAA is not codified as a section of the U.S. Code but is reprinted as a note to 9 U.S.C. § 401. "It makes no legal difference that this provision is codified in a statutory note, not the main body, of the United States Code." Olivieri v. Stifel, Nicolaus & Co., Inc., 112 F.4th 74, 84 n.4 (2d Cir. 2024); see Cornelius v. CVS Pharmacy Inc., 133 F.4th 240, 246 n.8 (3d Cir. 2025) ("Statutory notes are congressionally enacted and constitute binding law."); see also Memmer v. United Wholesale Mortg., LLC, 135 F.4th 398, 407 (6th Cir. 2025) (interpreting the text of the statutory note to determine whether plaintiff's claim accrued or a dispute arose after the enactment of the EFAA).

[2] By referring to "any dispute or claim that arises or accrues on or after the date of enactment," Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022), the EFAA may also apply if a "dispute," rather than a "claim" has arisen after March 3, 2022. See Cornelius, 133 F.4th at 245–46; see also Memmer, 135 F.4th at 413 ("The question then is whether (1) Memmer's sexual-harassment claim accrued on or after the date of enactment or (2) the parties' dispute arose on or after the date of enactment."). Finding here that Plaintiff's claims did accrue after the Effective Date, the court need not also evaluate whether a dispute arose after the Effective Date.

4

report of sexual harassment falls within definition of sexual harassment dispute). Since the retaliation claims accrued after the Effective Date, the EFAA applies to them.

In National R.R. Passenger Corp. v. Morgan, the Court made clear that "each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice[,]'" with its own limitations period. 536 U.S. 101, 114 (2002); see, e.g., Rae v. Woburn Public Schools, 113 F.4th 86, 103 (1st Cir. 2024) (holding that a series of discrete acts of retaliation cannot be amalgamated into one "retaliatory harassment claim to invoke the continuing violations doctrine"); see also Ayala v. Shinseki, 780 F.3d 52, 58 (1st Cir. 2015) (holding that relocation to a smaller office and withdrawal of job responsibilities constitute discrete acts).

Termination of employment constitutes a discrete act. See Morgan, 536 U.S. at 114 ("Discrete acts such as termination . . . constitute[] a separate actionable 'unlawful employment practice.'"). A discrete retaliatory or discriminatory act "occurred" on the day that it "happened." Id. at 110. This means that Plaintiff's retaliation claim accrued—and its statute of limitations clock started ticking—when the termination took place, which is "[o]n or about March 14, 2022." Compl. ¶ 23 [Doc. No. 1-1]; see Olivieri, 112 F.4th at 87 ("In short, the time a claim 'accrues' means the point at which the statute of limitations clock starts ticking."). Because this termination took place after the Effective Date, the EFAA applies to the retaliation claims.

      B.     Plaintiff's Hostile Work Environment Claims

Defendants argue that Plaintiff's sexual harassment claims accrued before the Effective Date such that the EFAA does not apply. According to Defendants, it is "the primary allegations forming the alleged sexual harassment" that govern the date of accrual of a sexual harassment claim, and Plaintiff's allegations "almost entirely predat[e] March 3, 2022." Defs.' Mem. ISO Mot. to Compel Arb. 12 [Doc. No. 11] (emphasis added). Plaintiff responds that a sexual

5

harassment claim accrues on the date of the <u>last</u> alleged act. Pl.'s Opp. 4 [Doc. No. 16]. Since her complaint includes incidents of sexual harassment that occurred after March 3, 2022, Plaintiff argues her sexual harassment claims accrued after the Effective Date. Therefore, according to Plaintiff, the EFAA applies, and the arbitration agreement is unenforceable. Id. at 5. Plaintiff is correct.

The EFAA applies to Plaintiff's sexual harassment and discrimination claims (Counts I, II, III, V, VI, and VII), notwithstanding that a portion of the allegations giving rise to these claims took place before the EFAA's Effective Date. These claims are brought under M.G.L. c. 151B, and they constitute hostile work environment claims. See Chery v. Sears, Roebuck and Co., 98 F. Supp. 3d 179, 191 (D. Mass. 2015) ("Chapter 151B provides a cause of action for a hostile work environment based on the cumulative effect of a series of abusive acts though each in isolation might not be actionable in itself.").

The Supreme Court has recognized on several occasions that the accrual of a claim marks the beginning of the statute of limitations period. "A claim ordinarily accrues when [a] plaintiff has a complete and present cause of action" and "the limitations period generally begins to run at the point when 'the plaintiff can file suit and obtain relief.'" Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 670 (2014) (internal quotation marks omitted) (quoting Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997)); see also Heimeshoff v. Hartford Life & Acc. Ins. Co., 571 U.S. 99, 105 (2013) ("As a general matter, a statute of limitations begins to run when the cause of action 'accrues' – that is, when the plaintiff can file suit and obtain relief.") (internal citation and quotations omitted). Therefore, to determine when a claim accrues under the EFAA, the court considers when the statute of limitations would start running for a claim under the statute.

A claim accrues—that is, the limitations period starts to run—at different times depending on the nature of the claim. Hostile work environment claims hold a distinct position in the world of claim accrual. Because "[t]heir very nature involves repeated conduct," it "cannot be said to occur on any particular day" but rather "over a series of days or perhaps years[.]" Morgan, 536 U.S. at 115. For this reason, even if "some of the component acts of the hostile work environment fall outside the statutory time period," the claim is still deemed timely filed if "an act contributing to the claim occurs within the filing period." Id. at 117. As a result, "[a] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." Id. at 122 (emphasis added); see also Green v. Brennan, 578 U.S. 547, 562 (2016) (explaining that the Court in Morgan, 536 U.S. 101 (2002) held that the "limitations period for hostile-work-environment claim runs from the last act composing the claim.").

The First Circuit has expounded on the purpose of applying the continuing violations doctrine for hostile work environment claims. "Under the 'continuing violation' doctrine, a plaintiff may obtain recovery for discriminatory acts that otherwise would be time-barred so long as a related act fell within the limitations period." Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 (1st Cir. 2009). "[T]he continuing violation doctrine is meant to protect plaintiffs from losing the ability to file suit for Title VII claims that might, by their nature, take time to materialize." Ayala, 780 F.3d at 58. This is because "[p]laintiffs might not realize that a violation has occurred, or might not have sufficient evidence to support a Title VII claim until more than the general time limit to file their claims has elapsed." Id.; see also Thomas v. Eastman Kodak Co., 183 F.3d 38, 54 (1st Cir. 1999) ("The purpose of [the serial violation doctrine] is to permit

7

suit on later wrongs where a wrongdoer would otherwise be able to repeat a wrongful act indefinitely merely because the first instance of wrongdoing was not timely challenged."). For this reason, "[the continuing violation doctrine] allow[s] suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008) (internal citation and quotations omitted).

Other circuits have similarly construed Morgan to hold that "hostile work environment claims accrue each time acts contributing to that environment occur." Almond v. Unified Sch. Dist. No. 501, 665 F.3d 1174, 1178 (10th Cir. 2011) (internal emphasis omitted); see also Oliveri, 112 F.4th at 86 ("[W]e often refer to a claim accruing and the limitations period starting as two sides of the same coin."); id. at 88 (noting that certain "claims are made up of a series of acts, they accrue and reaccrue with each successive act that is part of the singular unlawful practice" in case evaluating whether EFAA applied).

Plaintiff's allegations include events that took place after March 3, 2022. Specifically, Plaintiff alleges that on or about March 12, 2022, Ead sent Plaintiff "several text messages that indicated breasts." Compl. ¶ 21 [Doc. No. 1-1].[3] Applying the standard here, a cognizable act occurring after the Effective Date of March 3, 2022 enables application of the EFAA. Because the alleged sexual harassment continued past the March 3, 2022 Effective Date in the form of multiple text messages—at which point the statute of limitations for the claim reset and began anew—the EFAA applies and the Arbitration Agreement cannot be invoked to compel arbitration. Under the continuing violation doctrine, Plaintiff's limitations period runs from the

---

[3] Plaintiff also alleges that after RAC terminated Plaintiff's employment, she went to RAC to collect her personal belongings and Ead "grabbed her buttocks." Compl. ¶ 24 [Doc. No. 1-1]. These events took place after Plaintiff's employment had ended and the court has not considered them when determining whether Plaintiff's hostile work environment claims have accrued.

last alleged act of harassment on or about March 12, 2022, when Ead sent the harassing text messages.

As Plaintiff correctly noted, all the cases cited by Defendants for the proposition that the EFAA cannot be applied retroactively, Defs.' Mem. ISO Mot. to Compel Arb. 11–12 [Doc. No. 11], concern claims that accrued before March 3, 2022. These cases do not affect the court's analysis, as Plaintiff's claims concern events that allegedly continued after March 3, 2022. Defendants' argument that the term "case" should be narrowly interpreted to mean "a case in which the primary allegations forming the alleged sexual harassment occurred on or before the EFAA's effective date of March 3, 2022," id. at 12, is unpersuasive here. Nothing in the statutory language or the case law supports Defendants' contention that the "primary allegations forming the alleged sexual harassment" should have occurred on or after the Effective Date for the EFAA to apply. The EFAA makes no distinction between primary and non-primary allegations. With each successive act of sexual harassment, the relevant claim is newly accrued.

Because all of Plaintiff's claims come under the force of the EFAA, her arbitration agreement is, at her election, invalid and unenforceable.

C.     Evidentiary Hearing

Finally, Defendants argue that if the court is to find—as this court has—that the EFAA applies to Plaintiff's claims, that the court "should conduct an evidentiary hearing to determine for itself whether Plaintiff can offer the requisite proof to establish that her sexual harassment claim can avoid arbitration pursuant to the EFAA." Id. at 12–13.

The EFAA does not require any such evidentiary hearing and Defendants offer no support for their request. By its terms, a person "alleging conduct constituting a sexual harassment dispute[,]" 9 U.S.C. § 402(a), is entitled to EFAA's protections. Whether EFAA applies thus depends on whether Plaintiff's claims claiming a violation of Federal, Tribal or State

law against sexual harassment have been plausibly pled, not whether Plaintiff can ultimately prevail. See Yost v. Everyrealm, Inc., 657 F. Supp. 3d 563, 585 (S.D.N.Y. 2023) ("[W]hen a plaintiff's basis to invoke the EFAA is that her complaint claims a violation of a 'Federal, Tribal, or State' law against sexual harassment . . . such a claim must be plausibly pled."); see also Smith v. Boehringer Ingelheim Pharms., LLC, No. 3:24-CV-01266 (KAD), 2025 WL 2403042, at *6 (D. Conn. Aug. 19, 2025) ("[T]o invoke the EFAA and defeat a motion to compel an otherwise valid arbitration agreement, a plaintiff must allege facts sufficient to plausibly allege conduct related to a sexual harassment dispute."); see also Mitura v. Finco Servs., Inc., 712 F. Supp. 3d 442, 451–52 (S.D.N.Y. 2024), reconsideration denied, No. 23-CV-2879 (VEC), 2024 WL 1160643 (S.D.N.Y. Mar. 18, 2024) ("The Court agrees . . . with every other judge in this District who has decided the issue: to qualify as a 'sexual harassment dispute' under EFAA, the sexual harassment claim must be sufficiently pled to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).").

Here, Plaintiff has plausibly alleged her claims and Defendants have not contended otherwise. The court finds no grounds for an evidentiary hearing on Defendants' Motion.

### III.   Conclusion

For the foregoing reasons, Defendants' Motion to Compel Arbitration [Doc. No. 10] is DENIED. Defendants shall file their Answer to Plaintiff's Complaint [Doc. No. 1-1] no later than September 25, 2025.

IT IS SO ORDERED.

September 11, 2025                       /s/ Indira Talwani
                                         United States District Judge